## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Movement Mortgage, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) Civil Action File No.: _____ |
| **v.** | ) |
| | ) |
| **Richard A. Kundiger,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

COMES NOW Plaintiff Movement Mortgage, LLC ("Plaintiff" or "Movement"), by and through the undersigned counsel, and states and alleges as follows for its Complaint against the above-named Defendant:

## NATURE OF THE CASE

1. Plaintiff brings this action because Defendant Richard A. Kundiger ("Defendant") knowingly retained a substantial financial windfall from the sale of his property thereby failing to satisfy his mortgage at closing.

2. Despite receiving multiple payoff statements before closing showing that more than $245,000 was required to pay off his loan, Defendant allowed the closing agent to rely on an erroneous April 11, 2025, payoff of only $129,559.50, resulting in an underpayment that Movement later rejected.

3. Even after Plaintiff's outside counsel provided Defendant and his counsel with proof of the error—twice—Defendant feigned ignorance, claimed he was "paid" up, and continued to deny that he was retaining money that was not his. Defendant's conduct left the financial burden shifted entirely onto Plaintiff thereby compelling it to file this Complaint.

## PARTIES

4. Plaintiff is a foreign limited liability company organized and existing under the laws of the State of South Carolina, and was harmed by Defendant's conduct described herein.

5. Plaintiff has two members: Abrams Promise, Inc. and Harris Covenant, Inc. Abrams Promise, Inc. is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in the State of South Carolina. Harris Covenant, Inc. is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business in the State of Virginia. No member of Movement is a citizen of Kansas.

6. Defendant is a citizen of Kansas residing at 16880 S. Ridgeview Rd, Olathe, KS, 66062.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and the parties are citizens of different states.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claim occurred in the District of Kansas, including the mortgage payoff communications, property transfer, and Defendant's receipt of sale proceeds.

## RELEVANT FACTUAL ALLEGATIONS

**A. Defendant's Mortgage Loan and Repeated Payoff Statements**

8. At all relevant times, Defendant was the borrower on a mortgage loan serviced by Movement, Loan No. ******0724 (hereinafter, the "Loan"), secured by real property located at or near 6415–6495 W. 199th Street, Stilwell, Kansas 66085.

9. On August 19, 2024, Defendant received a payoff statement showing a total payoff of $250,990.06, good through August 30, 2024, including:

- o Unpaid principal: $431,670.83,
- o Interest at 4.500%,

- o Pro-rata PMI: $193.71,
- o Reno Funds credit: –$182,437.86,
- o Escrow balance: $2,493.83.

10. On March 26, 2025, at Defendant's request, Movement issued another payoff letter showing a total payoff of $245,449.88, good through March 31, 2025, including:

- o Unpaid principal: $426,113.95
- o Interest: $1,576.04,
- o PMI: $193.71,
- o Reno Balance: –$182,453.82,
- o Escrow balance: $6,736.63.

11. This March 26 payoff was emailed directly to Defendant, demonstrating that he had actual, direct knowledge of the amount required to satisfy the Loan immediately before the closing.

**B. The April 11 Payoff Letter Provided to the Closing Agent**

8. On April 11, 2025, Movement issued another payoff letter showing an erroneous, dramatically reduced payoff amount of $129,559.50, good through April 30, 2025, with:

- o Unpaid principal: $425,308.16,
- o Interest: $1,520.63,
- o PMI: $387.42,
- o Document recording: $20.00,
- o Reno Balance as –$297,676.71,
- o Escrow balance: $7,968.70.

9. The April 11 payoff letter was sent not to Defendant, but to the closing/title agent, who had no prior payoff information from Defendant and who relied on the payoff amount in preparing for closing.

10. Defendant knew or reasonably should have known that the April 11 payoff amount was inconsistent by more than $115,000 compared to the payoff letters he personally received on August 19, 2024 and March 26, 2025.

11. Defendant nevertheless remained silent and proceeded toward closing knowing that he owed Plaintiff substantially more than what the payoff showed.

**C. Closing on April 15, 2025 and Rejected Payoff Wire**

12. On April 15, 2025, the sale from Defendant to the buyer closed.

13. In reliance on the April 11 payoff letter, the title company wired $129,559.50 to Movement to satisfy Defendant's mortgage.

14. Defendant received the full sale proceeds, as though the Loan had been properly paid off, which meant that he received more than $115,000 than he was entitled to.

15. Later the same day—just after the sale had closed—Movement issued a corrected payoff showing that the total amount required to pay off the loan was $244,780.11, nearly double the amount Defendant permitted the title company to transmit.

16. Movement then rejected the payoff wire, explaining that the April 11 payoff letter had been replaced by the corrected April 15 statement.

17. As a result, the Loan remained unpaid and the title company and/or buyer were forced to address the problem—not Defendant, who had already received and retained the entirety of his sale proceeds.

**D. Defendant's Knowledge and Inconsistent Payoffs**

18. Defendant had access to and knowledge of two correct payoff letters in the months leading up to closing:

- $250,990.06 (August 19, 2024)
- $245,449.88 (March 26, 2025)

19. Defendant made no additional payments between the date of the March 26, 2025 payoff and the closing. Meaning, he did not pay down the amount owed, or reduce the payoff amount.

20. Nonetheless, through an accounting error, the April 11 payoff amount was more than $115,000 lower than both earlier payoff amounts, a discrepancy so large that no reasonable person could believe it reflected the true amount due.

21. Defendant failed to disclose the earlier payoff letters, the payoff discrepancies, or any information that would allow the title company to discover that the April 11 payoff was incorrect.

22. Defendant knowingly accepted the benefit of the sale proceeds, including $115,000 to which he was not entitled, while the payoff transmitted on his behalf was insufficient and ultimately rejected.

23. Defendant's conduct resulted in the title company, closing agent, or buyer having to address the outstanding mortgage debt that should have been satisfied at closing by Defendant.

**E. Plaintiff's continued notice to Defendant of the Payoff Error and Defendant's Continued Non-Payment in Bad Faith**

23. After these errors were discovered and before filing this Complaint, counsel for Plaintiff provided Defendant with documented proof demonstrating that the payoff amount relied upon at closing—$129,559.50—was incorrect and that the accurate payoff amount at the time of closing exceeded $244,000.

24. Counsel provided Defendant with copies of the April 11 payoff statement, the corrected April 15 payoff statement, and reconciliations showing the discrepancy between the transmitted payoff and the true amount owed. Upon receiving this information, Defendant feigned ignorance, denied that any error had occurred, and falsely insisted that his mortgage had been fully satisfied at closing—even though Movement had already rejected the payoff wire as insufficient. Defendant acknowledges that the loan was provided to him, he accepted the funds, and that the entire loan amount was never repaid by him.

25. Instead, Defendant seeks to retain funds which were provided to him in error.

26. In November 2025, Plaintiff's counsel again sent Defendant a full package of supporting documentation, including payoff records, the lender's rejection notices, and correspondence

confirming that the mortgage remained unpaid due to the payoff shortage caused by the incorrect April 11 payoff letter.

27. Despite being confronted a second time with unequivocal evidence, Defendant again refused to acknowledge the error, continued to insist that Defendant was "paid up", and affirmatively asserted entitlement to the financial windfall created by the erroneous April 11 payoff statement.

## COUNT I – UNJUST ENRICHMENT

28. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

29. Defendant received a substantial financial benefit at closing by accepting sale proceeds based on a payoff amount he knew, or reasonably should have known, was inaccurate.

30. Defendant knew from the payoff letters issued directly to him that the payoff required to satisfy the loan exceeded $245,000, yet he permitted—and relied upon—the transmission of only $129,559.50, an amount that was later rejected.

31. Defendant has accepted, retained, and refused to return at least $115,000 which is not money to which he is entitled, has earned, or otherwise has any right to retain.

32. Defendant's receipt and retention of sale proceeds constituted a benefit conferred upon him at the expense of Plaintiff.

33. Defendant's enrichment is inequitable and unjust because:

    a.    He knew that he had received [initial loan amount] in exchange for note and mortgage related to the subject property;

    b.    He never repaid the full [loan amount];

  c. Plaintiff released the mortgage, but has not been repaid the full loan amount due to the erroneous payoff;

  d. Defendant was aware that the payoff was short, and that at least $115,940.38 dollars was not his, due to prior payoffs;

  e. Defendant failed to inform the title company, or anyone else at closing, that the payoff was inaccurate;

  f. Defendant accepted the benefits of the sale knowing his mortgage would not be fully paid off;

  g. His silence caused the payoff shortage; and

  h. He shifted the burden of resolving his unpaid debt onto innocent third parties.

34. Equity and good conscience require Defendant to disgorge the amount by which he was unjustly enriched, including:

- The difference between the correct payoff of at least $245,449.88 and the amount wired ($129,559.50), for a total of at least $115,940.38;
- Any resulting interest, penalties, escrow shortages, or fees; and
- Any damages incurred by Plaintiff in addressing the rejected payoff, including its attorney's fees.

29. Defendant's retention of the benefits conferred is unjust, and Plaintiff is entitled to restitution in an amount to be proven at trial.

## COUNT II — FRAUDULENT MISREPRESENTATION

30. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

31. Defendant knowingly and intentionally misrepresented or concealed material facts regarding the true payoff amount required to satisfy his mortgage loan.

32. Defendant received multiple payoff statements showing that the amount remaining due on his loan was more than $115,000 greater than the payoff relied upon at closing—including payoff amounts of $250,990.06 (August 19, 2024) and $245,449.88 (March 26, 2025)—yet Plaintiff remained silent, concealed the fact that the payoff was wrong, permitted and encouraged the closing agent to rely on the incorrect April 11 payoff of $129,559.50, which was more than $115,000 lower.

33. Defendant had actual knowledge of these discrepancies and knew the April 11 payoff amount was materially inaccurate.

34. Defendant failed to disclose the accurate payoff amounts to the closing agent, title company, or Buyer, and instead allowed the closing to proceed based on a false and materially misleading payoff figure.

35. Defendant intended that the closing agent rely on the false payoff amount to complete the closing and transmit payoff funds on his behalf.

36. Plaintiff relied upon Defendant to be truthful in signing closing documents and consummating the sale.

37. Plaintiff suffered damages when Defendant executed closing documents which inaccurately captured the payoff as a result of the short payoff amount causing the closing agent to wire funds which should have been sent to Plaintiff to pay off the loan to Defendant.

38. Defendant's conduct constitutes fraud, and Plaintiff is entitled to recover all damages proximately caused by Defendant's misrepresentations, including punitive damages.

## COUNT III — NEGLIGENT MISREPRESENTATION

39. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

40. In the alternative to fraudulent misrepresentation, Defendant negligently failed to disclose material facts regarding the correct payoff amounts that he was under a duty to disclose.

41. Defendant knew or should have known that the closing agent would rely on his cooperation and the accuracy of all payoff information provided in preparing for closing.

42. Defendant breached his duty of ordinary care by permitting the closing agent to rely on an incorrect payoff amount substantially lower than the actual amount owed.

43. Defendant's omissions and misleading conduct directly resulted in the underpayment of his mortgage loan at closing.

44. Plaintiff reasonably relied on the payoff information provided for Defendant's benefit.

45. As a direct and proximate result, Plaintiff suffered financial harm.

## COUNT IV — PUNITIVE DAMAGES

46. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

47. Under Kansas law, punitive damages are recoverable for fraudulent misrepresentation where a defendant's conduct involves malice, fraud, or wanton disregard for the rights of others.

48. As detailed above, Defendant knowingly withheld accurate payoff information, knowingly permitted the closing agent to rely on an inaccurate payoff amount that he knew was more than $115,000 too low, and repeatedly feigned ignorance when confronted with proof of the error—conduct that constitutes intentional fraud and demonstrates malice and wanton disregard for the rights and financial interests of Plaintiff and other innocent parties.

**PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendant for:

a.  Restitution in an amount equal to Defendant's unjust enrichment;

b.  Pre-judgment and post-judgment interest;

c.  Punitive damages;

d.  Its attorney's fees; and

e.  All other relief the Court deems just and proper.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff requests that the trial in the above captioned case be conducted in Kansas City, Kansas.

Respectfully submitted:

SPENCER FANE LLP

*/s/Patrick J. McAndrews*
Patrick J. McAndrews            KS#24721
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
(816) 474-8100
(816) 474-3216 (facsimile)
pmcandrews@spencerfane.com

ATTORNEYS FOR PLAINTIFF MOVEMENT MORTGAGE, LLC